IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **TAIWAN DICKERSON, KIM KING-MACON, and TIFFANY RUSSELL,**<br><br>Plaintiffs,<br><br>vs.<br><br>**CENTENE MANAGEMENT COMPANY, LLC, and CENTENE CORPORATION,**<br><br>Defendants. | Case No. 4:22-cv-00519-HEA |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I.     INTRODUCTION

This is but one of the hundreds of Fair Labor Standards Act ("**FLSA**") cases Plaintiffs' counsel has filed in U.S. District Courts since 2019. *See, e.g.*, *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRWS, 2021 WL 11583464, at *7 (E.D. Ark. Sept. 8, 2021), *aff'd*, No. 21-3537, 2023 WL 4247395 (8th Cir. June 29, 2023) (discussing Plaintiffs' counsel's and his firm's "incorrigible" practices on FLSA cases and noting years-long "repeated admonitions by nearly every judge in the Eastern and Western Districts of Arkansas").[1] As with many of Plaintiffs' counsel's other FLSA cases, including five other cases brought against Defendants Centene Management Company, LLC ("**CMC**") and Centene Corporation, Plaintiffs Taiwan Dickerson, Kim King-Macon, and Tiffany Russell—former Care Coordinators ("**CCs**") at Arkansas Total Care—formulaically allege that Defendants did not pay them overtime in violation of the FLSA, 29 U.S.C. § 201, *et seq*.; *see generally* ECF No. 53, First Amended and Substituted Complaint ("**FAC**"). The Court denied Plaintiffs' motion for conditional certification on September 22, 2023, so all

---

[1] District Judge Billy Roy Wilson imposed Rule 11 sanctions against Plaintiffs' counsel for his conduct in the *Vines* case, specifically, suspending him and his firm from bringing FLSA cases in the Eastern District of Arkansas for two years. *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2023 WL 4685888, at *8 (E.D. Ark. July 21, 2023). It appears the sanctions imposed by District Judge Wilson are stayed pending Plaintiffs' counsel's appeal to the Eighth Circuit. *Id.* at ECF No. 141 (E.D. Ark. July 25, 2023).

that remains are Plaintiffs' individual FLSA claims for allegedly unpaid overtime. ECF Nos. 46, 53. Defendants are entitled to summary judgment on each Plaintiff's individual claims for allegedly unpaid overtime for the following reasons:

*First,* although Plaintiffs vaguely allege that Defendants did not pay for overtime outside of the regular work schedule (8:00 a.m. to 5:00 p.m.), ***Plaintiffs' own testimony and the undisputed documentary evidence demonstrates that CMC maintained a timekeeping policy directing CCs to accurately record their time, and indeed, each Plaintiff consistently recorded time before 8:00 a.m. and after 5:00 p.m. for which they received overtime pay.*** SUMF ¶¶ 20–76.[2] Specifically, the undisputed evidence demonstrates that Plaintiffs received, understood, and agreed to comply with CMC's timekeeping policy to accurately record their time; admitted that their time and pay records were accurate; consistently used CMC's timekeeping system to record overtime hours; were paid for those recorded overtime hours; if they worked outside of regular hours and had not recorded that time, either they or their supervisor edited their timesheets to ensure they were paid appropriately; and Defendants had no reason to know that Plaintiffs worked any overtime hours beyond what they recorded. *Id.*

*Second,* other than their vague and general self-serving testimony, Plaintiffs have no documentary evidence of the hours they allegedly worked and did not report. Each Plaintiff worked with their attorney to answer an interrogatory regarding the number of unreported hours they allegedly worked—Mr. Dickerson answered approximately "15 hours per week that went uncompensated"; Ms. Kim King-Macon answered "approximately 3-4 hours per week"; Ms. Russell answered "approximately 7-10 hours per week[.]" SUMF ¶¶ 38, 54, 73. On the last day of discovery, Plaintiffs provided a whole new set of "estimates" in their Supplemental Disclosures that doubled these amounts (Mr. Dickerson: 30 hours per week unpaid; Ms. King-Macon: 8 hours; Ms. Russell: 20 hours). SUMF ¶¶ 39, 54, 73. Yet at their respective

---

[2] References to Defendants' Statement of Uncontroverted Material Facts will be made as (SUMF ¶ _). Defendants' SUMF is based upon Plaintiffs' depositions, documents produced in discovery, and affidavit testimony from Defendants' representative. Defendants mention this at the outset because it may seem unusual to the Court that deposition testimony of current Defendants' representatives is not used. Although Defendants identified current representatives as possessing relevant and discoverable information, Plaintiffs took no depositions in this case.

depositions, none of the Plaintiffs had any specific recollection of the hours they allegedly worked and were not paid for, the approximate dates when such hours were allegedly worked, or how they arrived at their estimates provided in Interrogatory No. 6 or their subsequently served Supplemental Disclosures. *See* SUMF ¶ 30, Dickerson Tr. 93:11-16 ("A:  I'm not sure what -- how many times . . . It might have been under ten -- ten times, you know."); SUMF ¶ 56, King-Macon Tr. 96:12-15 ("A:  I didn't write them down. . . . I cannot tell you [the number of allegedly unpaid hours]."); SUMF ¶ 74, Russell Tr. 37:4-6 ("A:  I probably worked seven to ten hours of overtime a week.), 73:12-22 ("Q:  How many times would you say that occurred? . . . A:  I don't know. It was a lot of times. At least three to seven. Three to seven hours, sometimes, a week over."). Ms. Russell further testified that she had a notebook with dates/times she allegedly worked overtime and did not record, but she **destroyed** these notes well after this lawsuit was filed, and **after** she filed her consent to join the lawsuit as an Opt-In Plaintiff. SUMF ¶ 76. Consequently, Plaintiffs cannot demonstrate the number of hours they allegedly worked and for which they were not paid as a matter of just and reasonable inference as required by controlling Eighth Circuit authority.

**Third,** Mr. Dickerson's and Ms. Kim-Macon's claims are barred by the doctrine of res judicata based on the judgment in *Laertha Banks et al. v. Centene Management Company LLC and Centene Corporation*, Case No. 4:21-cv-00429-DPM, ECF No. 43 (E.D. Ark. Sept. 22, 2023). SUMF ¶ 84. In *Banks*, District Judge D.P. Marshall Jr. granted Defendants' Motion for Summary Judgment on Plaintiffs' FLSA overtime pay claims, and Mr. Dickerson and Ms. Kim-Macon are bound by the judgment. *Id.* Although the claim addressed on summary judgment in *Banks* involved bonuses that were allegedly not included in the regular rate of pay when calculating overtime, the factual predicate and the relief sought in *Banks* is the same as the instant case:  compensation for allegedly unpaid overtime. *Id.* Furthermore, Mr. Dickerson and Ms. King-Macon had a full and fair opportunity to raise their off-the-clock overtime claims at issue in this litigation at the time they were litigating the *Banks* case and failed to do so. SUMF ¶¶ 82, 84 (reminding plaintiffs—including Mr. Dickerson and Ms. King-Macon—of the September 9, 2022 deadline to amend the pleadings to include additional claims if needed).

**Fourth,** Centene Corporation is not a proper defendant as it does not employ CCs and is not a joint employer; only CMC employed Plaintiffs. SUMF ¶ 1.

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment on each of Plaintiffs' claims as to both Defendants and dismiss this case, with prejudice.

## II.    LEGAL STANDARD

Summary judgment is required if "there is no genuine dispute as to any material fact" and Defendants are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations and citations omitted).

Defendants have the initial burden of showing there is no genuine issue of material fact, which they can do simply by stating there is an absence of evidence to support essential elements of Plaintiffs' case. *See Celotex*, 477 U.S. at 325. "The non-moving party must substantiate his allegations by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059–60 (8th Cir. 2014) (affirming grant of summary judgment in favor of employer on FLSA claim where plaintiff "failed to come forward with sufficient evidence to show the amount and extent" of the unpaid work) (internal quotations and citations omitted). "A complete failure to prove an essential element of the [plaintiff's] case renders all other facts immaterial." *Carmody*, 713 F.3d at 404, 407 (affirming summary judgment in favor of employer where employees failed to "identify any record of evidence showing actual damages from unpaid work in excess of forty hours per week, in violation of the FLSA") (internal quotations and citations omitted).

4

III.     ARGUMENT

    A.     **Defendants Are Entitled to Summary Judgment for Plaintiffs' Claims for Unpaid Overtime Wages Under the FLSA.**

        1.     **The Undisputed Facts Do Not Support Plaintiffs' Claims that They Worked the Overtime Hours They Allege or that Defendants Had Knowledge.**

Plaintiffs seek to recover in this lawsuit for hours they allegedly worked and did not report to Defendants. To survive summary judgment on their claims for unpaid overtime under the FLSA, Plaintiffs must present evidence (1) they worked additional hours without compensation and (2) Defendants knew or should have known that they were working hours they were not reporting, which Plaintiffs have failed to do. *Rapp v. Network of Cmty. Options, Inc.*, 3 F.4th 1084, 1087 (8th Cir. 2021) (granting employer summary judgment on FLSA overtime claims as plaintiffs failed to provide any evidence to demonstrate the alleged overtime hours worked and employer had no notice of alleged overtime work) (*citing Hertz v. Woodbury Cty., Iowa*, 566 F.3d 775, 781 (8th Cir. 2009)). Thus, Plaintiffs cannot satisfy their burden as demonstrated by the many admissions they made during discovery. In addition, none of the Plaintiffs have produced any documentation supporting their claims, and in Ms. Russell's case, she destroyed the only evidence that might have supported her claims, which should result in an adverse inference against her as to her claims. SUMF ¶ 76; *see, e.g.*, *Taylor v. Null*, No. 4:17-CV-0231-SPM, 2019 WL 4673426, at *3, 7 (E.D. Mo. Sept. 25, 2019) (finding destruction of security footage warranted adverse inference finding).

### a.     Mr. Dickerson's Employment

Mr. Dickerson worked as an hourly, non-exempt Care Coordinator for Arkansas Total Care from April 9, 2018 to July 29, 2021. SUMF ¶ 20, Ex. C at p. 1. Mr. Dickerson admitted that CMC had written policies "prohibiting [employees] from working off-the-clock" and "requiring [employees] to report all time worked." SUMF ¶ 21, Ex. D at Requests for Admission 1-2. He further admitted he understood Centene's Timekeeping Policy, which he reviewed during his onboarding, received in the Employee Handbook, and could access via the CNET intranet. SUMF ¶ 22, Ex. E. Importantly, Mr. Dickerson agreed he understood and would comply with the timekeeping policy. SUMF ¶ 23. During his employment, Mr. Dickerson was re-trained on how to properly enter his time as part of a performance improvement plan.

SUMF ¶ 24, Ex. C at p. 32-34. Furthermore, Mr. Dickerson understood that he should report any timekeeping or pay inaccuracies to his supervisor or HR. SUMF ¶ 25.

Mr. Dickerson also admitted that he "received training about the requirement to report all of [his] hours worked" and "had access to the company's timekeeping system and knew how to operate it," was "capable of submitting corrections," and "was required to approve [his] time record in order to have [his] payroll processed." SUMF ¶ 26, Ex. D at Requests for Admission 4, 10, 12-13. Furthermore, Mr. Dickerson testified that the hours he worked were accurately stated on his timesheets and pay stubs. SUMF ¶ 27, Exs. F–G.

Although Mr. Dickerson testified in conclusory fashion that he was told to clock out at 5:00 pm, he could not recall who told him to do so or how or when he learned of this alleged "policy." SUMF ¶ 28. Indeed, to the contrary, the undisputed record is replete with 177 instances of Mr. Dickerson recording time worked past 5:00 p.m. SUMF ¶ 29, Ex. G. Relatedly, Mr. Dickerson also testified that at times, when he worked past 5:00 p.m. without logging his time, he would notify his supervisor, Shantonio Elliott, who would edit Mr. Dickerson's timesheet accordingly to ensure he was paid for the overtime. SUMF ¶ 30, Ex. H. In fact, Mr. Dickerson could not recall a single instance where he told Mr. Elliott to update his time and it was not updated accordingly. SUMF ¶ 31.

*Contrary to Mr. Dickerson's vague testimony that "there's nothing reflected showing that [he] was, you know, getting any overtime after 5:00" his own testimony, the four pages of documents he produced, his timesheets, and his pay records demonstrate that Mr. Dickerson regularly recorded overtime hours and was paid for all of those hours.* SUMF ¶ 32, Ex. I. Specifically, Mr. Dickerson recorded and was paid overtime for 22 out of 41 pay periods during his employment at Arkansas Total Care. SUMF ¶ 33, Ex. F. The proportion of pay periods in which Mr. Dickerson recorded and was paid overtime is especially significant because he took 92 days of PTO during his employment and admitted he would not have worked overtime those weeks, and because he only recorded TruCare notes after 5:00 p.m. on eight days and

admitted TruCare was an accurate record of his work. SUMF ¶ 34, Ex. J.[3] When Mr. Dickerson resigned, his email stated that he had a "wonderful learning and building experience with Arkansas Total Care" and mentioned nothing regarding the allegedly unpaid overtime. SUMF ¶ 35, Ex. K.

### b.      Ms. King-Macon's Employment

Ms. King-Macon worked as an hourly, non-exempt Care Coordinator for Arkansas Total Care from March 11, 2019 to July 24, 2019. SUMF ¶ 43, Ex. O at p. 1. Ms. King-Macon admitted that CMC had written policies "prohibiting employees from performing work off-the-clock" and "requiring employees to report all of the time they worked." SUMF ¶ 44, Ex. Q at Requests for Production Nos. 1-2. She further admitted she understood CMC's timekeeping policy, which she reviewed during her onboarding, received in the Employee Handbook, and could access via CNET. SUMF ¶ 45. Importantly, Ms. King-Macon agreed she understood and would comply with the timekeeping policies. SUMF ¶ 46. Ms. King-Macon also understood that she should report any timekeeping or pay discrepancies to payroll. SUMF ¶ 47.

Ms. King-Macon admitted that she "received training about the requirement to report all of [her] hours worked," "had access to the company's timekeeping system and knew how to operate it," was "capable of submitting corrections," and "was required to verify the time record in order for her payroll to be processed." SUMF ¶ 48, Ex. Q at Requests for Production 4, 10, 12-13. Furthermore, Ms. King-Macon testified that the hours she worked were accurately stated on her timesheets and pay stubs. SUMF ¶ 49, Exs. R–S. Ms. King-Macon confirmed that no supervisor told her to clock out at 5:00 p.m. and keep working. SUMF ¶ 50, King-Macon Tr. 56:14-20, 62:19-22 (Q:  And when you and Lauren had the meeting

---

[3] During his deposition, Mr. Dickerson for the first time indicated his claim in this matter only relates to allegedly unpaid mileage reimbursements, even though the FAC contains no such allegations. SUMF ¶ 36; *see generally* FAC. The deadline to amend the pleadings expired October 20, 2023, and raising new issues for the first time during his deposition when they were not alleged in the FAC does not create a genuine issue of material fact. ECF No. 48. Even if the Court were to consider Mr. Dickerson's claim that he was allegedly not paid certain mileage reimbursements, his claim fails for the same reasons his allegedly unpaid overtime claim fails:  the record is replete with mileage reimbursements that Mr. Dickerson was paid; he failed to identify a single instance of when he allegedly entered his mileage reimbursement and was not paid; and admitted that at times, he did not even submit his reimbursement so his employer had no notice; and has no documentary evidence of the amounts he is allegedly owed. SUMF ¶ 37, Ex. L.

about not working past 5:00, she didn't tell you to clock-out at 5:00 and continue working; correct? A:  No. She didn't.").

*Contrary to her self-serving allegations, the evidence demonstrates that Ms. King-Macon consistently recorded overtime and was paid accordingly.* Specifically, Ms. King-Macon recorded and was paid overtime for 7 of 17 pay periods. SUMF ¶ 51, Ex. R. This frequency is notable given that Ms. King-Macon was only employed for 94 work days, took 11 PTO days, arrived to work late 49 times (for which she was placed on a performance improvement plan), and only recorded TruCare notes after 5:00 p.m. on ten days. SUMF ¶ 52, Ex. T. Furthermore, even if Ms. King-Macon was working additional hours without recording her time accurately, she repeatedly testified that Defendants did not know she was doing so. SUMF ¶ 53, King-Macon Tr. 63:2-5 (Q: Okay. But if you weren't clocked-in when you said you're working after 5:00, if you'd already clocked-out, nobody knew you were working that time; correct? A: After I -- no, they didn't."; 69:15-18 (Q: Okay. And you said that you were working when you were not clocked-in. How would any supervisor ever know you were working when you weren't clocked-in? A: They wouldn't.").

### c.      Ms. Russell's Employment

Ms. Russell worked as an hourly, non-exempt Care Coordinator for Arkansas Total Care from September 17, 2018 to March 22, 2021. SUMF ¶ 58, Ex. W at p.1. Ms. Russell admitted that CMC had written policies "prohibiting employees from performing work off-the-clock" and she was aware that "employees were supposed to report all time in the timekeeping system accurately." SUMF ¶ 59, Ex. X at Requests for Admission 1-2. She further admitted that she understood Centene's Timekeeping Policy, which she reviewed during her onboarding, received in the Employee Handbook, and could access via CNET. SUMF ¶ 60. Importantly, Ms. Russell agreed she understood and would comply with the timekeeping policy. SUMF ¶ 61. Ms. Russell was even re-trained and reminded by her supervisor (including in weekly emails and as part of a performance improvement plan) on how to properly enter her time. SUMF ¶ 62, Ex. W at p. 20-23. In addition, Ms. Russell understood that she should report any timekeeping or pay

8

discrepancies immediately. SUMF ¶ 63. Ms. Russell also admitted that she "received training about the requirement to report all of [her] hours worked" and "had access to the company's timekeeping system and knew how to operate it," was "capable of submitting corrections," and "was required to approve [her] time record in order to have [her] payroll processed." SUMF ¶ 64, Ex. X at responses to Requests for Admission 4, 10, 12-13.

Significantly, Ms. Russell testified that the hours she worked were accurately stated on her timesheets and pay stubs." SUMF ¶ 65, Exs. Z–AA. Ms. Russell also testified that at times when she forgot to properly clock in or out, she would correct her own time sheet or notify her supervisor, Terrie Fain-Holloway, who edited Ms. Russell's timesheet to ensure she was paid for the hours she worked, including overtime. SUMF ¶ 66, Ex. BB. Ms. Russell could not recall a single instance where she told Ms. Fain-Holloway to correct her time and it was not corrected accordingly. SUMF ¶ 67.

***Contrary to Ms. Russell's vague testimony that she was not paid for all overtime hours worked because she was only told to work 40 hours per week, her own testimony, her timesheets, and her pay records demonstrate that Ms. Russell regularly recorded overtime and was paid for it.*** SUMF ¶ 69, Ex. Z. Specifically, the undisputed record shows that Ms. Russell recorded time before 8 a.m. at least 129 times and recorded time after 5:00 p.m. at least 204 times, resulting in Ms. Russell earning overtime during 26 out of 50 pay periods. SUMF ¶ 69, Ex. Z. The proportion of pay periods in which Ms. Russell recorded and was paid overtime is especially notable because she was on a medical leave for almost three months between April 11 to July 7, 2020, and from her return from leave to her termination in March 2021, she worked a reduced schedule with a 30% lighter caseload, multiple breaks throughout the day, and 4-5 days of intermittent leave per month. SUMF ¶ 70. Furthermore, she did not raise any issues regarding lack of overtime pay to CMC at any time during her employment. SUMF ¶ 71. Apparently, the Arkansas Labor Board directed Ms. Russell to Plaintiffs' counsel's firm; and now Ms. Russell is bringing an unpaid wage claim, without ever having considered or complained about this issue previously. SUMF ¶ 71.

Fatal to her claim, as with Ms. King-Macon, even if Ms. Russell was allegedly working additional

hours without recording it (for which there is no evidence), she repeatedly testified that she never told CMC she was doing so, her supervisor never instructed her to clock out and continue working, and in fact explicitly instructed Russell to accurately record her time. SUMF ¶ 72.

**2.     Analogous Cases Demonstrate that Plaintiffs' Vague and Unsupported Allegations Warrant Summary Judgment in Favor of Defendants.**

Plaintiffs' vague and unsupported allegations warrant dismissal of their FLSA overtime claims. In short, Plaintiffs fail to provide ***any evidence*** that they worked additional hours without compensation or that CMC knew or should have known that they were working hours they were not reporting. *See Rapp*, 3 F.4th at 1087 (*citing Hertz,* 566 F.3d at 781). Numerous District Court cases within the Eighth Circuit are instructive on this point.

For instance, in *Cage v. Multiband*, plaintiff (a cable installer) alleged that he "routinely worked" overtime and was not appropriately paid. *Cage v. Multiband, Inc.*, No. 1:12CV87 SNLJ, 2015 WL 687120, at *9 (E.D. Mo. Feb. 18, 2015). Judge Limbaugh Jr. ***granted summary judgment to the employer*** because, in relevant part, plaintiff (1) was properly compensated for all overtime he had reported; (2) failed to comply with the employer's policies that employees are responsible for accurately recording and reporting all working time and contacting payroll immediately if there is an error in pay; (3) only presented "vague allegations that he was not paid overtime" but produced no evidence to support his claim; (4) had not reported some of the alleged hours worked; and (5) had not produced sufficient evidence to establish the employers had notice of the allegedly unpaid overtime work. *Id.*, at *10, 12.

Similarly, in *Bell v. Westside Dialysis Unit, LLC*, plaintiff (a medical technician) alleged that she was not paid for all hours worked. *Bell v. Westside Dialysis Unit, LLC*, No. 4:21-CV-00748-BRW, 2023 WL 2350598, at *1 (E.D. Ark. Jan. 23, 2023). Judge Wilson emphasized that plaintiff had only provided her own testimony to support her claims, yet her testimony was "general and vague." *Id.* at *3. Furthermore, despite contending that she "worked two hours of overtime every week," she provided no evidence to support her assertion, and could not even recall specific times or dates. *Id.* Judge Wilson stated: "[w]hile it is true that, as a general matter, a plaintiff's testimony alone can supply the necessary evidence to survive

10

summary judgment, here, **Plaintiff's testimony is "too vague, too general, contradictory, and unsupported by reliable evidence" and granted summary judgment to Defendant.** *Id.* at *5; *see also Grounds v. City of Little Rock*, No. 4:21-CV-00115-BRW, 2022 WL 468011, at *4 (E.D. Ark. Feb. 15, 2022) (granting employer summary judgment on FLSA overtime claim as the testimony of plaintiffs—represented by Plaintiffs' counsel—was "too vague, too general, contradictory, and unsupported by reliable evidence").

Likewise, in *Marlin v. Cross Cty., Arkansas*, another case brought by Plaintiffs' counsel, plaintiff (a county jailer) alleged he was not paid overtime. *Marlin v. Cross Cnty., Arkansas*, No. 3:19CV00355 JM, 2021 WL 966864, at *1 (E.D. Ark. Mar. 15, 2021). Plaintiff attempted to argue that his employer could have been on notice of the allegedly unrecorded overtime hours by "look[ing] at the security cameras," but Judge Moody squarely rejected this argument as it "would not be reasonable to require that the [employer] weed through security camera footage to determine whether or not its employees were working beyond their scheduled hours." *Id.* at *2–3 (E.D. Ark. Mar. 15, 2021). He also highlighted that plaintiff had never complained about unpaid overtime, and that the **employer had no reason "to question whether [plaintiff] was turning in the overtime hours he deserved," especially where there was a process to submit overtime that plaintiff regularly used.** *Id.*

Similarly, in in *Zhou v. Int'l Bus. Machines Corp.*, No. 15-CV-1027-LRR, 2017 WL 1217195, at *1 (N.D. Iowa Mar. 31, 2017), *aff'd*, 709 F. App'x 413 (8th Cir. 2018), plaintiff (a contract technician) alleged his employer, "forc[ed] him to underclaim his hours" because his supervisor allegedly told him that "no overtime" was allowed and threatened that contractors like him could be replaced at any time. *Id.* at *17, 19. Judge Reade granted the company's motion for summary judgment finding that plaintiff failed to meet his burden of showing the company knew or should have known the plaintiff was working off the clock. Judge Reade specifically explained that "[w]hether an employer has maintained an established procedure for overtime claims that [employees] regularly used can impact the amount of inquiry required of the employer into potential overtime worked." *Id.* at *17 (internal quotations and citations omitted). **Indeed, Judge Reade noted that the "record [was] replete" with the company directing plaintiff to claim**

4889-6293-3932.8 / 095402-1034

*all hours worked, that plaintiff "consistently claimed and received overtime throughout his placement at IBM," and that plaintiff was paid for every overtime hour he reported. Id. at \*19.*

Here, there is ***no documentary evidence*** demonstrating that Defendants directed or encouraged Plaintiffs to underreport their hours—indeed even in their respective responses to the Request for Admissions, they only state "the company had an unwritten policy and practice of only paying employees for the hours they were scheduled regardless of whether or not the volume of their work required them to perform work outside of those hours," ***not that CMC told them to underreport hours.*** SUMF ¶¶ 21, 44, 59, Exs. D, Q, X at responses to Request for Admission No. 2.

Instead, the documentary evidence—CMC's handbook with its timekeeping and pay policies, Plaintiff's timesheets and TruCare notes reflecting their hours worked, and Plaintiffs' paystubs reflecting that they consistently reported overtime and were paid for the hours they worked and reported— demonstrate just the opposite. Even this Court acknowledged at the conditional certification stage that Mr. Dickerson's and Ms. King-Macon's respective counsel-prepared declarations only presented "vague and nonspecific claims regarding nonpayment of overtime" and that their deposition testimony undercut their declarations. ECF No. 46 at 8–9.

It's undisputed that Plaintiffs (1) received the timekeeping policy and related trainings and were on notice to accurately record their time, SUMF ¶¶ 21–22, 24, 26, 44–46, 48, 59, 62–64; (2) were properly compensated for all overtime they had reported, SUMF ¶¶ 27, 32, 49, 65; (3) failed to comply with CMC's policies that employees are responsible for accurately recording and reporting all working time and contacting payroll immediately if there is an error in pay, *see, e.g.*, FAC; (4) presented no documentary evidence that they were not paid overtime, SUMF ¶¶ 40–41, 56–57, 76; (5) failed to report to CMC any of the alleged hours worked for which they now claim they were not paid, *see, e.g.*, SUMF ¶¶ 31, 53, 72; (6) did not produce any evidence to establish Defendants had notice of the allegedly unpaid overtime work or otherwise directed them to underreport hours, and in fact testified the opposite, SUMF ¶¶ 31, 53, 72; and (7) acknowledged that no one ever instructed them to work while they were not clocked in, SUMF ¶¶ 21,

44, 59, Exs. D, Q, X at responses to Request for Admission No. 2; SUMF ¶ 50.

In addition, CMC established a reasonable process for Plaintiffs to report uncompensated work time, so it was not CMC's obligation to take affirmative steps to determine whether Plaintiffs were working outside of the times they reported. *See Marlin*, 2021 WL 966864, at *1 (it is not an employer's obligation to "weed through security camera footage" to determine whether employees were working off-the-clock). Rather, CMC had no reason to question the overtime hours Plaintiffs reported where there was a process to submit overtime that Plaintiffs consistently used. *See Rapp*, 3 F.4th at 1087 ("the employee must show that the employer had actual or constructive knowledge—not merely that the employer 'could have known.'") (citing *Hertz*, 566 F.3d at 781). As in *Bell* and the other cases within this Circuit discussed above, there is no evidence that Plaintiffs worked hours for which they were not paid, nor is there evidence that CMC knew or should have known Plaintiffs were working unreported time. Plaintiffs' self-serving testimony is "too vague, too general, contradictory, and unsupported by reliable evidence" to create a genuine issue of material fact.

### B.    Plaintiffs Cannot Meet Their Burden of Showing the Amount of Unpaid Overtime as a Matter of Just and Reasonable Inference.

Even if Plaintiffs were able to demonstrate that they worked time for which they were not paid, the Court should still grant summary judgment for the independent reason that ***Plaintiffs cannot meet their burden of showing the amount and extent of their unpaid overtime as a matter of just and reasonable inference***.

To prevail on a claim for unpaid overtime under the FLSA, Plaintiffs bear the burden to demonstrate the amount and extent of the unpaid overtime work that would allow a fact-finder to determine the number of unpaid overtime hours as a matter of just and reasonable inference. *See Holaway*, 771 F.3d at 1060 (affirming grant of summary judgment  to employer where plaintiff provided vague testimony regarding allegedly unpaid hours worked). It is undisputed that CMC provided Plaintiffs with a method to record the hours they worked and they had the ability to and did edit their time entries. SUMF ¶¶ 12–19. Plaintiffs testified that they understood CMC's policies requiring their time records to be accurate, received reminder

and trainings on the same, and understood they were to report any time violations or pay discrepancies to HR. SUMF ¶¶ 21–24, 44–48, 59–63. Despite these admissions, Plaintiffs each claim they are owed compensation for an uncertain amount of overtime hours they allegedly worked but did not report during their employment.

In his attorney-assisted response to Interrogatory No. 6, Mr. Dickerson estimated that "on average [he] worked approximately 15 hours per week that went uncompensated." SUMF ¶ 38, Ex. M at Response to Interrogatory No. 6. This "estimate" doubled to 30 hours per week in his recent Supplemental Disclosures dated April 12, 2024. SUMF ¶ 39, Ex. N.[4] Yet, during his deposition, Mr. Dickerson could not provide any details regarding how many times he allegedly worked unrecorded overtime:

> 23 Q:  Okay. So you -- so you would clock out when
> 24 you finished your work; right?
> 25 A:  Yes, ma'am.
>
> 1 Q:  Okay. And you're saying that there were,
> 2 like, a few occasions where you kept working after you
> 3 clocked out?
> 4 A:  Yes, ma'am.
>  . . .
> 9 Q:  So how many occasions did you keep working
> 10 after you clocked out?
> 11 A I'm not sure. I'm not sure what -- how many
> 12 times.
> 13 Q:  Well, can you give me an estimate?
> 14 A:  It might have been under ten -- ten times, you
> 15 know. There was -- but like I said, it was towards the
> 16 end of my time with Arkansas Total Care.

SUMF ¶ 40. Surely had Mr. Dickerson regularly worked approximately 15 or 30 hours of overtime per

---

[4] It is especially troubling that Plaintiffs' counsel served the Supplemental Disclosures doubling "estimates" of allegedly unpaid overtime ***after Plaintiffs' respective depositions, as the admissions in the depositions materially contradict the Supplemental Disclosures and other attorney-prepared documents in the case.***

Due to lack of evidence and the contradictory sworn evidence in this matter, Defendants are exploring the possibility of seeking sanctions against Plaintiffs' counsel for pursuing this lawsuit in bad faith, after Plaintiffs' respective admissions during their depositions that materially contradict every other document submitted by their counsel in this case, demonstrating the frivolous nature of their claims. *See* 28 U.S.C.A. § 1927; *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168, 1183 (S.D. Fla. 2012) (awarding employer reasonable attorney's fees as plaintiff's counsel improperly pursued non-existent FLSA claims); *Estrada v. FTS USA, LLC*, 810 F. App'x 743, 745 (11th Cir. 2020) (affirming $60,000 sanctions against plaintiff's counsel for making objectively frivolous claims that employer had never paid overtime which was contradicted by documentary and testimonial evidence).

week over three years, he would be able to estimate the alleged overtime worked with more certainty than

"under ten - - ten times." ***Not surprisingly, Mr. Dickerson admitted that he has no records to support his***

***baseless and contradictory allegations.*** SUMF ¶ 41, Dickerson Tr. 102:20-103:4 (A: I just -- I -- there's

nothing that I can -- that I have documented, you know, that's showing after -- I just know that at times

after 5:00, you know, that times, you know, were -- it wasn't -- it wasn't documented in 2021, you know.

It wasn't documented."). Mr. Dickerson could not explain why he worked hours that he did not record

during his employment, nor could he explain why he frequently recorded overtime but allegedly did not on

"under ten" occasions. SUMF ¶ 42.

      In her attorney-assisted response to Interrogatory No. 6, Ms. King-Macon estimated that she

worked "approximately 3-4 hours per week that went unrecorded and uncompensated." SUMF ¶, 54 Ex. U

at Response to Interrogatory No. 6. This "estimate" doubled to 8 hours in her recent Supplemental

Disclosures dated April 12, 2024. SUMF ¶ 55, Ex. N. Yet, during her deposition, Ms. King-Macon likewise

could not provide any details on how many times she allegedly worked overtime and did not record her

hours:

> 24 Q:  Okay. Can you estimate how many hours you think you were
> 25 owed for?
> 1 A: No. I can't.
> 2 Q:  Can you approximate?
> 3 A:  No.
>  . . .
> 6 A:  I mean, I can't tell you that. I don't know what months
> 7 it was but I can tell you that I spent several hours and I
> 8 don't know exactly how many.
> 9 Q:  Several hours.
> 10 A Yes.
> 11 Q Several hours, okay.
> 12 A I didn't write them down. If I had, you know, it would be
> 13 different but I did not write them down.
> 14 Q So ten or less?
> 15 A I cannot tell you that. I don't know.

SUMF ¶ 56. ***As with Mr. Dickerson, Ms. King-Macon admitted that she has no records to support her***

***baseless allegations.*** SUMF ¶ 57, King-Macon Tr. 96:12-13 ("A:  I didn't write them down. If I had, you

4889-6293-3932.8 / 095402-1034

know, it would be different but I did not write them down.").

In her attorney-assisted response to Interrogatory No. 6, Ms. Russell estimated that she worked "approximately 7-10 hours per week that went unrecorded and uncompensated." SUMF ¶ 73, Ex. CC at Response to Interrogatory No. 6. This "estimate" doubled to 20 hours in her recent Supplemental Disclosures dated April 12, 2024. SUMF ¶ 73, Ex. N. Yet, during her deposition, Ms. Russell's estimate of this alleged time worked varied wildly (i.e. 1-2 times per week, 2-3 times per week, 3-7 hours per week), and she could not provide any concrete details about how many times she allegedly worked overtime and did not record her hours. SUMF ¶ 74. Significantly, Ms. Russell was on leave for approximately three months and did not work at all during that time, and following her leave, through the end of her employment, she had a 30% reduced case load and was able to take at least four days off per month. SUMF ¶ 75.

Even though she cannot point to specific times and days she allegedly worked while not clocked in, Ms. Russell testified she recorded these alleged hours on a notepad that she destroyed during the pendency of this litigation, so ***she has no documentary evidence to support her allegations.*** SUMF ¶ 76.[5]

***In short, Plaintiffs' "estimates" that they worked 15-30 additional hours, 3-8 additional hours, 7-20 additional hours of overtime, beyond the significant overtime they already reported and were paid for are wholly uncorroborated, are contradicted by their testimony that they cannot recall any details, and in short, are insufficient to satisfy their burden of proving the amount and extent of their allegedly unpaid overtime.*** *See Holaway*, 771 F.3d at 1059–60 (finding plaintiff failed to meet burden where basis for overtime claim was mere estimation, based on bare, contradictory assertions where the plaintiff provided only vague testimony without reference to specific days and hours worked); *Rapp*, 3 F.4th at 1088 (finding plaintiffs failed to meet burden in part, because they failed to identify specific hours of the week during which they worked the alleged overtime and where plaintiffs "failed to provide a meaningful explanation of how they arrived at their final [counsel-generated] estimates") (citation omitted); *see also Bell*, 2023 WL

---

[5] Based on her admitted destruction of evidence after Ms. Russell voluntarily opted in to this litigation, Defendants will seek an adverse inference based on her destruction of evidence—that she in fact worked no hours for which she was not paid—should this matter proceed to trial.

2350598, at *4–5 (finding plaintiff failed to meet burden where spreadsheet of allegedly uncompensated overtime was "likely not accurate" as it did not align with plaintiff's testimony and provided no information that was used "to construct it" and plaintiff testified she was "bad with dates"); *Bailey v. New Age Distrib.*, No. 4:18-cv-00538, 2019 WL 6249395 (E.D. Ark. Nov. 21, 2019) (granting employer summary judgment and explaining that "virtually identical" declarations of plaintiffs—represented by Plaintiffs' counsel—that they worked between 50-60 hours each week were unsupported by any record evidence and were insufficient to satisfy their burden of proving the amount and extent of unpaid work); *Zhou*, 2017 WL 1217195, at *21 (finding plaintiff failed to meet burden where he "admitted that he did not keep notes contemporaneously as he worked, and also admitted that he has no notes or any other objective evidence demonstrating the amount of [unpaid] overtime that he worked" and where "record is also unclear as to how often he allegedly worked overtime without claiming it, and how often he merely claimed less overtime than he worked."). Thus, summary judgment is appropriate because Plaintiffs have not identified any evidence from which a fact-finder could fairly estimate damages.

**C.      Mr. Dickerson's and Ms. King-Macon's Claims Are Barred by Res Judicata.**

Furthermore, the doctrine of res judicata based on Mr. Dickerson's and Ms. King-Macon's involvement in the *Banks* case provides an independent ground for the Court to dismiss their respective claims. On May 18, 2021, Plaintiffs' counsel filed a putative collective action on behalf of Laertha Banks and Aria Lambert under the FLSA and the Arkansas Minimum Wage Act in the U.S. District Court of the Eastern District of Arkansas. SUMF ¶ 77, *Banks et al. v. Centene Management Co. LLC et al.*, Case No. 4:21-cv-00429-DPM, ECF No. 1 (E.D. Ark. May 18, 2021). In *Banks*, the plaintiffs alleged that Defendants "failed to pay [plaintiffs] and other similarly situated employees 1.5x their regular rate for all hours worked in excess of 40 per week," specifically with regard to bonuses that were allegedly not included in calculating overtime pay. SUMF ¶ 78, Ex. DD. On September 29, 2021 and November 11, 2021, Mr. Dickerson and Ms. King-Macon filed their respective consents to join the *Banks* action. *Id.* at ECF Nos. 10–11. They both sought to recover for unpaid overtime wages and agreed to be bound by any Court judgment. SUMF ¶ 79, Exs. EE–FF.

17

On January 31, 2022, Defendants moved to dismiss any FLSA collective action claims as the plaintiffs had failed to file a timely motion for collective certification. SUMF ¶ 80, Ex. GG. Two weeks later, the *Banks* plaintiffs attempted to amend their complaint to add opt-in plaintiffs Mr. Dickerson and Ms. King-Macon as named plaintiffs and bring additional collective claims regarding off-the-clock work for CCs. SUMF ¶ 81, Ex. HH. On March 23, 2022, the *Banks* Court denied plaintiffs' motion for conditional certification, and also denied their motion to amend the complaint to bring collective claims. SUMF ¶ 82, Ex. II. The *Banks* Court specifically noted that plaintiffs had until September 9, 2022, to amend the pleadings, ***at which time they could have pled additional claims.*** *Id.*

The *Banks* plaintiffs—including Mr. Dickerson and Ms. King-Macon—did not amend by the September 9, 2022 deadline; thus, the only operative claims were individual unpaid wage claims based on allegations that bonuses were not included in the regular rate when calculating overtime pay. *Id.*

On October 31, 2022, Defendants moved for summary judgment in *Banks*. SUMF ¶ 83, Ex. JJ. On September 22, 2023, the *Banks* Court granted summary judgment in favor of Defendants and dismissed the case. SUMF ¶ 84, Exs. KK–LL. In doing so, the *Banks* Court included Mr. Dickerson and Ms. King-Macon as named plaintiffs (as the parties' briefing had treated them as such) and bound them to the judgment. *Id.*

Res judicata, or claim preclusion, "bars relitigation of the same claim between parties . . . where a final judgment has been rendered upon the merits by a court of competent jurisdiction." *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997) (citation omitted). Res judicata applies if "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties . . . ; and (4) both suits are based upon the same claims or causes of action." *Satanic Temple v. City of Belle Plaine, Minnesota*, 80 F.4th 864, 870 (8th Cir. 2023) (citing *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (citation omitted)).[6]

**First,** in *Banks*, the Eastern District of Arkansas granted Defendants summary judgment as to the plaintiffs' FLSA claims and dismissed the case. SUMF ¶ 84, Exs. KK–LL. Mr. Dickerson and Ms. King-

---

[6] The claim preclusive effect of a federal court judgment is determined by federal common law. *In re Finstad*, 4 F.4th 693, 696 (8th Cir. 2021) (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001)).

Macon were bound by the Court's judgment. *Id.* "It is well established that summary judgment is a final judgment on the merits for purposes of *res judicata.*" *Dicken v. Ashcroft*, 972 F.2d 231, 233 n.5 (8th Cir. 1992) (citing *King v. Hoover Group, Inc.*, 958 F.2d 219, 222 (8th Cir. 1992)).

  **Second**, *Banks* was based on proper jurisdiction. SUMF ¶ 77, Ex. DD (citing jurisdiction under the provisions of 28 U.S.C. § 1331 because "this suit raises federal questions under the FLSA").

  **Third**, both the *Banks* suit and the instant suit involve the same parties—Plaintiffs Taiwan Dickerson and Kim King-Macon and Defendants Centene Management Company, LLC and Centene Corporation. SUMF ¶¶ 77, 84, Exs. DD, KK–LL. Mr. Dickerson and Ms. King-Macon became party plaintiffs in the *Banks* case when they filed opt-in forms, and the *Banks* Court specifically added them as "named plaintiffs" in the judgment. SUMF ¶ 79, Exs. EE–FF; *see also Spatz v. Lee's Summit R-7 Sch. Dist.*, No. 4:20-CV-00448-RK, 2022 WL 212415, at *1 (W.D. Mo. Jan. 24, 2022) (discussing opt-in individuals are "parties to the litigation upon filing consents and absent a dismissal from the cases, remained parties in the litigation") (citing *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280–81 (11th Cir. 2018)); *Smith v. Premier Env't Servs., Inc.*, No. 4:21-CV-232-DPM, 2022 WL 120294, at *1 (E.D. Ark. Jan. 12, 2022) (same).

  **Fourth**, "[t]o determine whether two causes of action are the same, the court examines whether the second lawsuit is 'part of the transaction, or series of connected transactions, out of which the [first] action arose . . . giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit.'" *First Nat'l Bank in Sioux Falls v. First Nat'l Bank South Dakota*, 679 F.3d 763, 767 (8th Cir. 2012) (quoting *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)). "Whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based on the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684–85 (8th Cir. 1989) (citations omitted). Put differently, "***res judicata bars relitigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding***." *King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir. 1992); *see also Brown v.*

*Kansas City Live, LLC*, 931 F.3d 712, 713 (8th Cir. 2019) ("Res judicata operates so that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'") (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1153–54 (8th Cir. 2012) (res judicata bars claims "'arising from the original circumstances' but 'under new legal theories'") (citation omitted).

The allegations in the instant lawsuit arise from the same nucleus of operative fact as the allegations in the *Banks* suit and could have been brought in *Banks*. In both *Banks* and the instant case, Mr. Dickerson and Ms. King-Macon allege "Defendant failed to pay Plaintiffs 1.5x their regular rate for all hours worked in excess of 40 per week" based on their employment as CCs at Arkansas Total Care and seek materially identical relief for "unpaid overtime wages" in both lawsuits. *Compare* Ex. DD at ¶ 57 and Section IX with ECF No. 53 at ¶ 47 and Section VI; *Jennings v. Kellogg Co.*, 274 F. Supp. 2d 1080, 1083–84 (D. Neb. 2003) (granting summary judgment on res judicata grounds as plaintiff's claims for breach of fiduciary duty, breach of contract, fraud and negligence could have been asserted in prior lawsuit alleging claims under Title VII and breach of duty of fair representation that was dismissed on summary judgment); *Winner Rd. Properties, LLC v. BMO Harris Bank, N.A.*, No. 4:16-CV-1395 CAS, 2017 WL 4310453, at *5 (E.D. Mo. Sept. 28, 2017) (granting motion to dismiss on res judicata grounds as actions were based on the "same nucleus of operative of fact" where they both "allege[d] malfeasance by [defendant]" and sought to "recoup for shortages in the assets [in the trusts]"); *cf. Hicks v. O'Meara*, 31 F.3d 744, 746 (8th Cir. 1994) (explaining plaintiffs' minimum wage and overtime claims under the FLSA constituted one type of claim for relief because "they were not paid enough during the time they worked," while plaintiffs' wrongful termination claim depended on the parties' contractual obligations under their employment contract).

To the extent the Court finds that the claims in the instant lawsuit are not an exact match to those raised in the *Banks* suit, that is a non-issue as there was nothing precluding Mr. Dickerson and Ms. King-Macon from including their instant FLSA claims in *Banks*. Indeed, the *Banks* Court even reminded Mr. Dickerson and Ms. King-Macon of their right to amend their pleadings to add additional claims until

September 9, 2022 (i.e. approximately five months after the Order was issued). SUMF ¶ 82, Ex. II.

Mr. Dickerson and Ms. King-Macon already brought claims for "unpaid overtime wages" under the FLSA, which the *Banks* Court dismissed with prejudice, and those claims cannot be re-litigated here. *See, e.g.*, *Latin v. Martin*, No. 423CV04103SOHMEF, 2023 WL 9895381, at *3 (W.D. Ark. Nov. 20, 2023), *adopted by*, No. 4:23-CV-4103, 2024 WL 894670, at * (W.D. Ark. Jan. 8, 2024), *reconsideration denied*, No. 4:23-CV-4103, 2024 WL 993306 (W.D. Ark. Mar. 7, 2024) (granting motion to dismiss claims against certain defendants as barred by res judicata because even though the claims were not identical, plaintiff could have raised those claims in prior lawsuit); *Branum v. Midland Credit Mgmt., Inc.*, No. 1:21-CV-105 SNLJ, 2022 WL 3107138, at *2 (E.D. Mo. Aug. 4, 2022) ("But issues that were—or could have been— raised in a prior lawsuit are precluded by res judicata.") (citation omitted) (granting defendant summary judgment where plaintiff could have brought Fair Debt Collections Practices Act claim in prior lawsuit as it was based on same nucleus of operative facts: "defendant's attempt to collect on plaintiff's Lowe's credit account").

In short, Mr. Dickerson and Ms. King-Macon cannot escape the finality of the *Banks* ruling by continuing with a separate FLSA lawsuit arising from their employment with Arkansas Total Care under slightly modified legal theories. Each had a full and fair opportunity to raise the FLSA overtime claims that are at issue in this litigation during the *Banks* case. Allowing them to proceed with FLSA claims against Defendants a second time in this matter would circumvent the res judicata doctrine, which is grounded in equity and serves to protect Defendants from the expense and vexation of multiple lawsuits, to conserve the Court's judicial resources, and to promote the public's reliance on final adjudication. *See, e.g.*, *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted).

### D.     Centene Corporation Is Not a Proper Defendant.

Plaintiffs' claims against Centene Corporation fail because Centene Corporation did not employ Plaintiffs, nor is it a joint employer with CMC. Plaintiffs bear the burden of proving the employer-employee relationship. *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993). The existence of an employer-employee relationship may turn on several factors, including whether the alleged employer: (1) has the

power to hire and fire the employee, (2) supervises and controls the employee's work schedule or conditions of employment, (3) determines the rate and method of payment, and (4) maintains employment records. *Ash v. Anderson Merchandisers, LLC*, No. 14-CV-000358-DW, 2014 WL 11394891, at *2 (W.D. Mo. July 2, 2014), *aff'd*, 799 F.3d 9547 (8th Cir. 2015) (citations omitted); *see also Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (looking to the economic reality of the arrangement to determine existence of employment relationship).

The Eighth Circuit applies a "strong presumption that a parent company is not the employer of its subsidiary's employees." *Larson v. Isle of Capri Casinos, Inc.*, No. 16-00908-CV-W-ODS, 2018 WL 6495074, at *12 (W.D. Mo. Dec. 10, 2018) (citing *Brown v. Fred's Inc.*, 494 F.3d 736, 739 (8th Cir. 2007)); *Roper v. Verizon Commc'ns, Inc.*, No. 18-5270, 2020 WL 7123316, at *12 (E.D. Pa. Dec. 4, 2020) (dismissing parent corporation from case after finding that call center workers were not jointly employed by parent company of subsidiary corporation). Here, Plaintiffs have not (and cannot) demonstrate that Centene Corporation (CMC's parent company) is a joint employer. In their FAC, Plaintiffs alleged in conclusory manner that "revenue generated from Centene Management and Centene Corporation was merged and managed in a unified manner" such that they "shared employees and ownership with the authority to establish wages and wage policies" and operated as a "single enterprise." ECF No. 53 at ¶¶ 18–20. However, aside from these unsupported allegations, Plaintiffs have not set forth any evidence that Centene Corporation had control over the terms and conditions of their employment.

Indeed, they cannot produce such evidence, as Centene Corporation did not employ Plaintiffs. SUMF ¶ 1, Ex. A at Verified Response to Interrogatory No. 17. Specifically, Centene Corporation did not hire or fire Plaintiffs, did not establish their job duties, and did not play any role in setting pay policies or the terms and conditions of their employment. As such, the Court should dismiss Centene Corporation as a Defendant. *See, e.g.*, *Clark v. Centene Corp.*, No. A-12-CA-174-SS, 2013 WL 12120414, at *7 (W.D. Tex. Feb. 1, 2013) (granting summary judgment to dismiss Centene Corporation as a defendant as plaintiff failed to establish it was a joint employer with one of its subsidiaries).

4889-6293-3932.8 / 095402-1034

Case: 4:22-cv-00519-HEA   Doc. #:  61-1   Filed: 05/01/24   Page: 23 of 24 PageID #: 610

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor and dismiss with prejudice Plaintiffs' First Amended and Substituted Complaint as to both Defendants, and for such other relief as the Court deems just and proper.

Dated this ___day of May, 2024.

*/s/ Breanne Sheetz Martell*
Breanne Sheetz Martell, #39632 (WA)
*Admitted Pro Hac Vice*
bsmartell@littler.com

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101
Telephone: 206.623.3300
Facsimile: 206.447.6965

Patricia J. Martin #57420 (MO)
pmartin@littler.com

LITTLER MENDELSON P.C.
600 Washington Avenue
Suite 900
St. Louis, MO  63101
Telephone:       314.659.2000
Facsimile:       314.659.2099

Eva C. Madison, #98183 (AR)
*Admitted Pro Hac Vice*
emadison@littler.com

LITTLER MENDELSON, P.C.
17 E. Dickson St., Suite 204
Fayetteville, AR 72701
Telephone: 479.582.6100
Facsimile: 479-582-6111

**ATTORNEYS FOR DEFENDANTS**

4889-6293-3932.8 / 095402-1034

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the ____ day of May, 2024, a true and correct copy of the above and foregoing **Defendants' Memorandum In Support Of Their Motion for Summary Judgment** was electronically filed with the court using the CM/ECF system, which sent notification to all parties in interest participating in the CM/ECF.

*/s/ Breanne Sheetz Martell*
Breanne Sheetz Martell, #39632 (WA)

4889-6293-3932.8 / 095402-1034