Exhibit JJ

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | | |
|---|---|---|
| LAEARTHA BANKS and<br>ARIA LAMBERT, Each<br>Individually and on Behalf of<br>all Others Similarly Situated, | | Plaintiffs |
| V. | Case No. 4:21-cv-429-JM | |
| CENTENE MANAGEMENT<br>COMPANY and CENTENE<br>CORPORATION, | | Defendants |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

| | | | PAGE |
|---|---|---|---|
| I. | FACTUAL BACKGROUND | | 2 |
| | A. | Plaintiffs' Employment with Centene | 2 |
| | | 1. LaEartha Banks | 2 |
| | | 2. Aria Lambert | 2 |
| | | 3. Taiwan Dickerson | 2 |
| | | 4. Kim King-Macon | 2 |
| | B. | Bonuses Paid to Plaintiffs | 3 |
| | | 1. Annual Bonus | 3 |
| | | 2. Referral Bonus | 3 |
| | | 3. Key Contributor Award | 4 |
| II. | AUTHORITIES AND ANALYSIS | | 4 |
| | A. | Summary Judgment Standard | 4 |
| | B. | Plaintiffs' Claims for Violation of the FLSA and the AMWA Fail as a Matter of Law. | 5 |
| | | 1. Centene Is Entitled to Summary Judgment on Plaintiffs' Claims Regarding Annual Bonuses | 6 |
| | |    a. Plaintiffs' Annual Bonuses were discretionary bonuses that are excluded from calculating the "regular rate." | 6 |
| | |    b. Centene properly paid overtime on Plaintiffs' Annual Bonuses because they were calculated as a percentage of total earnings. | 8 |
| | | 2. Centene Is Entitled to Summary Judgment on Plaintiffs' Claims Regarding Referral Bonuses. | 11 |
| | | 3. Centene Is Entitled to Summary Judgment on Plaintiffs' Claims Regarding Key Contributor Awards. | 13 |
| | | 4. Centene Is Entitled to Summary Judgment as to the Opt-In Plaintiffs. | 14 |
| | |    a. Opt-In Plaintiff King-Macon has no viable claim. | 14 |
| | |    b. Opt-In Plaintiff Dickerson's claims fail as a matter of law. | 14 |
| III. | CONCLUSION | | 15 |

Plaintiffs LaEartha Banks and Aria Lambert (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, brought overtime claims under 29 U.S.C. § 201, et seq. (the "FLSA") and individual claims under Ark. Code § 11-4-201, et seq. (the "AMWA") against their former employer, Centene Management Company, LLC ("Centene") and its parent company, Centene Corporation (collectively, "Defendants"). This matter is set for a bench trial the week of January 17, 2023, ECF No. 14, but it can be dismissed at summary judgment without the need to spend the Court's and parties' time on a trial.

Shortly after Plaintiffs filed their Complaint, two individuals, Taiwan Dickerson and Kim King-Macon, filed Consents to Join Collective Action on September 29, 2021 and November 11, 2021, respectively. ECF Nos. 10 and 11. While the lawsuit was brought as a collective action, on March 13, 2022, this Court granted Defendants' motion to deny conditional certification under the FLSA and dismissed the collective action, and further denied Plaintiffs' motion to file an amended complaint. ECF No. 25. Therefore, only the individual claims of Plaintiffs remain.[1]

In their Complaint, Plaintiffs claim that their bonuses were not included in their regular rates when calculating their overtime pay. Statement of Uncontroverted Material Facts ("SUMF") ¶ 1. Plaintiffs are not making any other claims. SUMF ¶ 2. The undisputed evidence conclusively demonstrates that Centene accurately calculated all overtime by (1) paying discretionary Annual Bonuses that are a percentage of Plaintiffs' total earnings; and (2) properly excluding Referral Bonuses and Key Contributor Awards from the regular rate pursuant to the relevant statutes and regulations. No other bonuses were paid to Plaintiffs. There is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law as to Plaintiffs' claims in their entirety.

---

[1] The status of Opt-in Plaintiffs Dickerson and Macon has not been addressed, and thus Defendants are also seeking to dismiss their claims.

Page 1

I. **FACTUAL BACKGROUND**

    A. **Plaintiffs' Employment with Centene**

        1. **LaEartha Banks**

Plaintiff LaEartha Banks worked as an hourly, non-exempt Utilization Management Specialist – Behavioral Health for the Corporate Advanced Behavioral Health business unit for the Arkansas Total Care health plan from February 11, 2019 to March 12, 2021. SUMF ¶ 3. During her employment with Centene, she received one Annual Bonus, one Referral Bonus, and one Key Contributor Award, all in 2020. SUMF ¶ 4. Ms. Banks did not receive any additional bonuses during her employment. SUMF ¶ 5.[2]

        2. **Aria Lambert**

Plaintiff Aria Lambert worked as an hourly, non-exempt Concurrent Review Nurse for Arkansas Total Care from July 15, 2019 to February 25, 2021. SUMF ¶ 6. During her employment with Centene, Ms. Lambert received an Annual Bonus and a Referral Bonus, both in 2020. SUMF ¶ 7. Ms. Lambert did not receive any additional bonuses during her employment. SUMF ¶ 8.

        3. **Taiwan Dickerson**

Opt-in Plaintiff Taiwan Dickerson worked as an hourly, non-exempt Care Coordinator for Arkansas Total Care from April 9, 2018 to July 29, 2021. SUMF ¶ 9. During his employment, he received Annual Bonuses in 2019, 2020, and 2021. SUMF ¶ 10. Mr. Dickerson did not receive any additional bonuses during his employment. SUMF ¶ 11.

        4. **Kim King-Macon**

Opt-in Plaintiff Kim King Macon worked as an hourly, non-exempt Care Coordinator for Arkansas Total Care from March 11, 2019 to July 23, 2019. SUMF ¶ 12. She was terminated for

---

[2] Although Ms. Banks speculated in her deposition that she thought she may have received a "profit-sharing bonus" and a "401K bonus," such bonuses did not exist apart from the Annual Bonus. SUMF ¶¶ 62-72.

Page 2

gross misconduct and was not eligible for an Annual Bonus payment given the short period of her employment and the timing of her termination in July 2019. SUMF ¶ 13. Ms. Macon did not receive any bonuses of any kind during her employment. SUMF ¶ 14.

### B. Bonuses Paid to Plaintiffs

#### 1. Annual Bonus

Plaintiffs Banks, Lambert, and Dickerson received certain Annual Bonus payments during their employment with Centene. SUMF ¶¶ 4, 7, 10. Annual Bonuses are one-year cash incentive awards for the achievement of business and individual performance objectives, and they are calculated as a percentage of an employee's total earnings. SUMF ¶¶ 16-17. Numerous factors influence the dollar amount of Annual Bonuses, including overall company performance, business unit performance and metrics, individual tenure, and individual performance as measured in the performance review and the supervisor's decision about how much to allocate to each individual on their team. SUMF ¶ 18. Annual Bonuses are discretionary with no guarantee of receiving any amount – it is up to the discretion of multiple levels of management as to whether bonuses were funded and how much. SUMF ¶ 19.

Plaintiffs' Annual Bonuses were calculated based on: (1) their total eligible earnings, which included regular earnings, overtime earnings, and earnings while on paid leave ("Performance Year Eligible Earnings"); (2) a bonus target percentage of total eligible earnings based on their length of employment and position with Centene ("Bonus Target Percentage"); (3) the level of funding to their particular business unit ("Business Unit Funding"); and (4) their individual performance ("Individual Multiplier"). SUMF ¶ 20. Their Annual Bonuses were paid in March based on earnings and performance for the prior year. SUMF ¶ 21.

#### 2. Referral Bonus

Plaintiffs Banks and Lambert received Referral Bonus payments during their employment

with Centene. SUMF ¶ 43. Referral Bonuses were paid to them for referring candidates who were ultimately hired by Centene. *Id.* Banks and Lambert were not required to engage in recruiting of other employees. SUMF ¶ 44. Rather, participation in referring activities was voluntary. SUMF ¶ 45. As the referring activity was not part of their job duties, Plaintiffs completed it outside of work hours, spent insignificant time on it, and made referrals informally among their social acquaintances. SUMF ¶ 46. They did not need to complete any paperwork to receive their Referral Bonuses. SUMF ¶ 47. Instead, the candidate would simply list the referring employee's name on the employment application. SUMF ¶ 48.

### 3. Key Contributor Award

In December 2020, Ms. Banks received a Key Contributor Award, which was a $15.00 gift certificate provided as a holiday gift. SUMF ¶ 60. The gift was not measured by or dependent on Ms. Banks' hours worked, production, or efficiency. SUMF ¶ 61.

## II. AUTHORITIES AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Roxas v. Presentation Coll.*, 90 F.3d 310, 315 (8th Cir. 1996); Fed. R. Civ. P. 56(c). A disputed fact is not "material" unless its resolution could affect the outcome of the case under governing law, and a dispute is not "genuine" unless the evidence bearing on the disputed fact is such that a reasonable person could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, a nonmoving party may not rest upon mere denials or allegations, but instead, must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 247–48. In other words, "speculation and conjecture are insufficient to

defeat summary judgment." *See, e.g., Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006). The mere existence of a scintilla of evidence in support of the nonmoving party's case is insufficient; there must be evidence on which the fact-finder could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252.

### B. Plaintiffs' Claims for Violation of the FLSA and the AMWA[3] Fail as a Matter of Law.

The FLSA requires employers to compensate non-exempt employees for each hour worked in excess of forty hours during a workweek at a rate not less than one and one-half times the "regular rate" at which they are employed. 29 U.S.C. § 207(a)(1). An employee's regular rate is determined by dividing their total compensation by the total number of hours worked in the workweek. 29 U.S.C. § 207(e); *Walling v. Halliburton Co.*, 331 U.S. 17, 27 (1947); 29 C.F.R. § 778.109. The regular rate includes "all remuneration for employment paid to, or on behalf of, the employee," unless it falls under one of eight statutory exceptions. 29 CFR § 778.207(e); *see also* DOL Opinion Letter FLSA, 1997 WL 998000, at *1. The burden is on the employer to establish that one of the exceptions applies. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (2006). As a result, employers must include any bonuses as part of total compensation when calculating a worker's regular rate, unless such payments are discretionary bonuses or gifts on special occasions, among other statutory exclusions. 29 U.S.C. § 207(e); 29 C.F.R. § 778.208; 29 C.F.R. § 778.211.

While Plaintiffs allege that Centene violated the FLSA for failing to include bonuses in their regular rate, their claims cannot survive summary judgment because nothing in the FLSA or

---

[3] Claims under the Arkansas Minimum Wage Act ("AMWA") are subject to the same standards and definitions as the FLSA, so all of the arguments herein apply equally to the AMWA. *See Lyons v. ConAgra Foods Packaged Foods, LLC*, No. 4:12CV00245, 2013 WL 12304019, at *2–3 (E.D. Ark. Oct. 31, 2013); *Phillips v. Pine Bluff*, No. 5:07-cv-00207, 2008 U.S. Dist. LEXIS 44313, at *5 (E.D. Ark. Jun. 4, 2008). "In fact, the Arkansas Department of Labor 'may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the Arkansas Minimum Wage Act] . . . except to the extent a different interpretation is clearly required.'" *Helmert v. Butterball*, 805 F. Supp. 2d 655, 663 n.8 (E.D. Ark. 2011) (citing 010.14.1 Ark. Code R. § 112).

its regulations makes Centene's pay practices unlawful. Centene properly calculated all overtime and thus Plaintiffs' claims fail as a matter of law.

> 1. **Centene Is Entitled to Summary Judgment on Plaintiffs' Claims Regarding Annual Bonuses.**
>
>> a. **Plaintiffs' Annual Bonuses were discretionary bonuses that are excluded from calculating the "regular rate."**

The FLSA states, in relevant part, that "[s]ums paid in recognition of services performed during a given period if […] both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly" are statutorily excluded in calculating the regular rate. 29 U.S.C. § 207(e)(3). Therefore, discretionary bonuses compliant with this statutory exception need not be considered when calculating employees' overtime payments.

This Court has previously held that discretionary bonuses similar to those paid by Centene were not included in the regular rate of pay. *See Vire v. Entergy Operations, Inc.*, No. 4:15-CV-00214 BSM, 2016 WL 10575139 (E.D. Ark. Oct. 31, 2016) (Miller, J.). There, the plaintiffs moved for partial summary judgment, arguing that three forms of payment should be included in the regular rate of pay, one of which was an incentive plan bonus. The court denied the motion, reasoning that the bonuses were discretionary, and were thus not included in the regular rate of pay:

> The incentive plan bonuses were not guaranteed. […] The award was not automatic and certainly not contingent on an employee meeting established goals, but rather entirely at management's discretion. […] Indeed, it was possible that there could be no funding for a bonus at all. […] Not only was it management's decision whether the program would be funded, but the amount of the bonus was also at management's discretion. […]
> The discretionary nature is no surprise. Many plaintiffs acknowledged the variability of the bonuses and that they were not guaranteed […]
> While the plaintiffs' benefits package included a potential to receive the award, the

Page 6

> existence of the bonus and amount was not guaranteed. […] While the compensation package acknowledged eligibility, there was no promise the bonuses would occur in a specified amount. The shift supervisors' activity does not determine whether they receive the bonus, but rather management's discretion determines availability and amount.

*Vire*, at * 4, 5.

Here, Centene's Annual Bonuses satisfy the definition of "discretionary" because Centene retains discretion as to the fact of payment and as to the amount of payment. *See* 29 CFR § 778.211(b). Each year Plaintiffs were eligible for a target Annual Bonus depending on their tenure and position. SUMF ¶¶ 15, 20. Whether they would receive that bonus amount, or any bonus at all, however, was determined at the discretion of multiple levels of management, from their supervisors to the Board of Directors. SUMF ¶ 19. Factors that impacted whether an Annual Bonus was paid and the amount of each such Annual Bonus included overall company performance, business unit performance and metrics, individual tenure, and individual performance as measured in the performance review and the supervisor's decision about how much to allocate to each individual on their team. SUMF ¶ 18. The fact that Annual Bonuses are discretionary with no guarantee of receiving any amount is made clear from the offer letters that Plaintiffs received, the language of the policy, as well as Centene's practice.

Centene has been transparent and made clear even prior to the employment of hourly employees like Plaintiffs that Annual Bonuses are discretionary and will depend on multiple factors. Plaintiffs' offer letters state, in relevant part: "Bonuses are dependent on company, business unit and individual performance, and are subject to the discretion and approval of Senior Management and the Board of Directors." SUMF ¶ 22. Both Plaintiffs Banks and Lambert testified they accepted the terms of the offer letters that they received from Centene. SUMF ¶ 23. Plaintiffs also testified they agreed to abide by, and did comply with all policies, practices, and procedures

of Centene, which were subject to change in the sole discretion of Centene. SUMF ¶ 24. Plaintiff Lambert agreed that the Annual Bonuses were discretionary. SUMF ¶ 19.

In addition to the clear language in the offer letters, Centene has promulgated Incentive Bonus Plans that emphasize its exclusive authority to determine the employees who would be granted Annual Bonuses as well as the amount of any bonuses. The policy states, in relevant part, that the Compensation Committee of the Board of Directors "has exclusive authority" to select the employees who would be awarded bonuses and determine the size and terms of any bonuses. SUMF ¶ 25.

Lastly, the discretionary nature of the Annual Bonus is made clear by Centene's practice. While Plaintiffs were all eligible to receive Annual Bonuses when employed by Centene, they did not always receive their target Annual Bonus amount. For example, in 2020, Plaintiff Banks only received 80% of her target bonus, and in 2021, she received no Annual Bonus. SUMF ¶¶ 31, 34. Similarly, Plaintiff Lambert received no Annual Bonus in 2021 due to her performance. SUMF ¶ 41.

Thus, like the incentive plan bonus in *Vire*, Centene's Annual Bonuses were discretionary with no guarantee of receiving any bonus. Centene management retained the exclusive discretion to determine the employees who would be granted Annual Bonuses as well as the amount. As such, Plaintiffs' claims related to Centene's Annual Bonus payments should be dismissed.

      **b.    Centene properly paid overtime on Plaintiffs' Annual Bonuses because they were calculated as a percentage of total earnings.**

Even if this Court assumes, arguendo, that Centene's Annual Bonuses were nondiscretionary bonuses, Centene's overtime calculations remain accurate and compliant with federal and state law. FLSA regulations recognize that a bonus calculated as a percentage of total earnings – i.e., multiplying the employee's pay by the same fixed percentage of both the employee's

Page 8

straight-time earnings and overtime earnings – provides for the simultaneous payment of overtime compensation due on the bonus. 29 CFR § 778.210. The regulation states:

> In some instances the contract or plan for the payment of a bonus may also provide for the simultaneous payment of overtime compensation due on the bonus. For example, a contract made prior to the performance of services may provide for the payment of additional compensation in the way of a bonus at a rate of 10 percent of the employee's straight-time earnings, and 10 percent of his overtime earnings. In such instances, of course, payments according to the contract will satisfy in full the overtime provisions of the Act and no recomputation will be required. *Id.*

Therefore, when an employer pays a bonus as a percentage of total earnings, the employer has increased both the regular rate of pay and the bonus pay by the same percentage, which satisfies the FLSA's overtime requirements and no additional overtime is owed.

Numerous courts have applied 29 CFR § 778.210 and upheld the validity of bonuses calculated as a percentage of total earnings. *See, e.g.*, *Akers v. Tim Jungblut Trucking, Inc.*, No. 118CV03316JRSMPB, 2020 WL 1447647, at *2-3 (S.D. Ind. Mar. 25, 2020) (granting motion for summary judgment and holding that percentage-of-earnings bonus correctly paid overtime); *Russell v. Gov't Employees Ins. Co.*, No. 17-CV-0672-JLS-WVG, 2017 WL 2959348, at *8 (S.D. Cal. July 11, 2017) (granting motion to dismiss where "Defendant properly excluded the [percentage] bonus from Plaintiff's regular rate of pay when calculating Plaintiff's overtime pay"); *Chavez v. Converse, Inc.*, Inc., No. 15-CV-03746 NC, 2016 WL 4398374, at *3 (N.D. Cal. Aug. 18, 2016) (granting motion for summary judgment and finding that percentage bonuses calculated as quarterly earnings times target percentage times 100% times store revenue achievement percentage did not require recalculation of regular rate); *Brock v. Two R Drilling Co., Inc.*, 789 F.2d 1177, 1179 (5th Cir. 1986) ("payment of a bonus calculated as a percentage of the employee's total wages…generally does not require recomputation of the 'regular' rate of pay"); *Siomkin v. Fairchild Camera & Instrument Corp.*, 174 F.2d 289, 294 (2d Cir. 1949) (recognizing validity of

Page 9

percentage bonuses when paid based on total earnings in the current year).

Likewise, the Department of Labor ("DOL") has reaffirmed that percentage bonuses comply with the FLSA. For example, in July 2019, the DOL opined that an employer is not required to recalculate the regular rate if the employer pays a fixed percentage bonus that simultaneously pays overtime compensation due on the bonus, explaining that "a bonus of 15 percent of both [the employee's] straight-time and overtime wages would simultaneously include all overtime compensation due on the bonus as an arithmetic fact." DOL WH Op. Ltr., 2019 WL 2914103 (July 1, 2019). As another example, in February 2006, the DOL opined that a bonus calculated as 5% of an employee's straight-time and overtime earnings automatically included overtime pay and did not require additional payment of overtime. DOL WH Op. Ltr., 2006 WL 4512946 (Feb. 17, 2006). *See also, e.g.,* DOL WH Op. Ltr., 2004 WL 3177882 (Sept. 21, 2004) (explaining that no additional payment of overtime is required where bonus is paid as a percentage of total earnings, as long as employer pays the same percentage of straight-time and overtime earnings); DOL WH Op. Ltr, 2001 WL 1558953 (Feb. 5, 2001) (bonus based on percentage of total earnings complies with the FLSA's overtime requirements); DOL WH Op. Ltr, 1997 WL 998000 (Jan. 23, 1997) ("Payment of a bonus and simultaneous payment of the overtime compensation due on the bonus satisfies the overtime requirements of the FLSA and no recomputation is required.").

Here, Plaintiffs' Annual Bonuses were calculated based on their Performance Year Eligible Earnings, which included regular <u>and</u> overtime earnings, as well as a percentage comprised of their Bonus Target Percentage, Business Unit Funding, and Individual Multiplier. SUMF ¶¶ 17, 20. Thus, the Annual Bonuses are indisputably percentage bonuses that comply with the FLSA and no additional overtime compensation is due to Plaintiffs.

For example, based on the above calculation, in March 2020, Plaintiff Banks received an Annual Bonus of $858.00 based on her total earnings and performance in 2019. SUMF ¶ 26. Her Performance Year Eligible Earnings, which included regular earnings, overtime earnings, and earnings while on paid leave, was $53,621.53. SUMF ¶ 27. Her Bonus Target Percentage based on her length of employment and position with Centene was 2%. SUMF ¶ 28. Her Business Unit Funding for the Corporate Behavioral Health business unit in which she worked was 100%. SUMF ¶ 29. Her individual annual performance rating was Meets Expectations, and for her Individual Multiplier, her supervisor chose to award her 80% of her bonus target. SUMF ¶ 30. Thus, her bonus was calculated as $53,621.53 (Performance Year Eligible Earnings) x 2% (Bonus Target Percentage) x 100% (Business Unit Funding) x 80% (Individual Multiplier), for a total of $858.00. SUMF ¶ 31. The Annual Bonuses of the other Plaintiffs were calculated in a similar manner as FLSA-compliant percentage bonuses. SUMF ¶¶ 35-40, 42.

As the evidence establishes, the Annual Bonuses paid to Plaintiffs are permissible percentage bonuses pursuant to 29 CFR § 778.210. Plaintiffs were fully paid the overtime owed to them because the Annual Bonuses were calculated as a percentage of their straight-time and overtime earnings. Plaintiffs are not entitled to any additional overtime compensation and summary judgment must be granted as to the Annual Bonuses.

### 2. Centene Is Entitled to Summary Judgment on Plaintiffs' Claims Regarding Referral Bonuses.

Plaintiffs Banks and Lambert also received Referral Bonuses during their employment with Centene. The DOL has determined that "referral bonuses" are not considered renumeration for employment and are properly excluded from the regular rate calculation if the following elements are met:

(1) participation in referrals is strictly voluntary;

Page 11

(2) recruitment efforts do not involve significant time; and

(3) the activity is limited to after-hours solicitation among social acquaintances.

U.S. Dep't of Labor, Fact Sheet #54 – The Health Care Industry and Calculating Overtime Pay, *available at* http://www.dol.gov/whd/regs/compliance/whdfs54.pdf. *See also* 29 C.F.R. § 778.211(d) (listing "referral bonuses for employees not primarily engaged in recruiting activities" among examples of bonuses that can be excluded from the regular rate).

As the DOL explained in a recent opinion letter, this represents its "longstanding position":

> The preamble to the Department's 2019 Final Rule revising the regular rate regulations (Regular Rate Under the Fair Labor Standards Act) reaffirmed the Department's longstanding position that sums paid to an employee for recruiting another to join his or her employer's workforce are not part of the recruiting employee's remuneration for employment that must be included in the regular rate, if the following conditions are met: (1) participation in recruitment activities is strictly voluntary, (2) the employee's efforts in connection with recruitment activities do not involve significant amounts of time, and (3) recruitment activities are limited to after-hours solicitation among friends, relatives, neighbors, and acquaintances as part of the employee's social affairs. [citations omitted] As explained in the preamble to the revised regulations, satisfaction of these conditions demonstrates that the employee receiving a recruitment bonus is not employed to recruit others, and therefore, the bonus is not "remuneration for employment" that must be included in the employee's regular rate. *See* 84 FR 68756.

DOL WH Op. Ltr., 2020 WL 1640073, at *2 (Mar. 26, 2020).[4]

Here, the Referral Bonuses paid to Plaintiffs satisfy each of the requirements to qualify for the exclusion, as Plaintiffs testified. For both Banks and Lambert, the only two Plaintiffs who received such bonuses, they were not required to recruit potential employees for Centene, and it

---

[4] The DOL's interpretations and opinions "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Perez v. Contingent Care, LLC*, 820 F.3d 288, 292 n.4 (8th Cir. 2016) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Courts interpreting FLSA statutes and regulations have relied on DOL Fact Sheets and opinion letters as persuasive authority. *See, e.g., Perez*, 820 F.3d at 292 (relying on DOL opinion letter); *Johnson v. Derhaag Motor Sports, Inc.*, No. 13-cv-2311 (SRN/FLN), 2014 WL 5817004, at *13-14 & n.7, *18 (D. Minn. Nov. 10, 2014) (relying on DOL Fact Sheets in analysis and finding that "the Department of Labor's views are entitled to judicial deference because the agency is directed by Congress to administer the FLSA"); *Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043, 1048 (W.D. Miss. 2019) (relying on DOL Fact Sheet in analyzing FLSA and parallel state-law claims).

was a strictly voluntary activity. SUMF ¶¶ 55, 58. Besides speaking with potential candidates, Plaintiffs Banks and Lambert were not required to do any additional work to receive a referral bonus. SUMF ¶ 50. Rather, they spent insignificant time outside of work hours speaking with social acquaintances. Plaintiff Lambert testified that she spoke with a former coworker for about 20 minutes during non-work hours about Centene. SUMF ¶ 59. Likewise, Plaintiff Banks testified she communicated with her former co-worker by phone and text message during non-work hours and spent about 30 minutes. SUMF ¶ 56. Therefore, Centene is entitled to summary judgment on all of Plaintiffs' claims based on Referral Bonuses.

> 3. **Centene Is Entitled to Summary Judgment on Plaintiffs' Claims Regarding Key Contributor Awards.**

An employee's regular rate does not include sums paid as gifts, such as gifts made at Christmas time or on other special occasions where the amounts are not measured by or dependent on hours worked, production, or efficiency. 29 U.S.C. 207(e)(1). The regulations further clarify that a bonus paid at Christmas or on another special occasion may qualify as a "gift," and thus be excluded from the regular rate, "so long as the amounts are not measured by or directly dependent upon hours worked, production, or efficiency." 29 C.F.R. § 778.212(c). *See, e.g., Alminiana v. Lowe's Home Ctrs., LLC.*, No. 5:20-CV-00010-KDB-DSC, 2020 WL 5640511, at *2 (W.D.N.C. Sept. 22, 2020) (one-time bonus paid to employees "as a show of appreciation for their service" was properly excluded from the regular rate as a gift); *Meyer v. City of Raleigh*, No. 5:99-cv-324-BO, 2001 LEXIS 25215, at *27-28 (E.D.N.C. Aug. 10, 2001) (annual bonuses were "in the nature of gifts" because they were not measured by employee performance or hours worked); *Moreau v. Klevenhagen*, 956 F.2d 516, 521 (5th Cir. 1992) (monthly longevity payments based upon each deputy's tenure were properly excluded from regular rate of pay because they "[were] not measured by or dependent on hours worked, production or efficiency" and were therefore gifts).

Here, the only Plaintiff who received a Key Contributor Award was Plaintiff Banks. In December 2020, Centene gave her a $15.00 gift certificate as a holiday gift. SUMF ¶ 60. Plaintiff Banks testified in her deposition that the $15.00 Amazon gift cards were given to everyone in the same amount and were not related to hours worked or her production. SUMF ¶ 61. Like the bonuses at issue in *Alminiana, Meyer,* and *Moreau*, Ms. Banks' holiday gift was not measured by her performance. Accordingly, Centene properly excluded this bonus from the calculation of Ms. Banks' regular rate of pay, and her claim must be dismissed.

### 4. Centene Is Entitled to Summary Judgment as to the Opt-in Plaintiffs.[5]

#### a. Opt-in Plaintiff King-Macon has no viable claim.

This lawsuit is based on the allegations that Defendants failed to properly calculate employees' overtime pay based on the payment of bonuses. Opt-in Plaintiff Macon never received a bonus of any kind during her short-lived employment with Centene prior to her involuntary termination. SUMF ¶ 14. Thus, Defendants are entitled to summary judgment as to her claims.

#### b. Opt-in Plaintiff Dickerson's claims fail as a matter of law.

The only bonuses that Opt-in Plaintiff Dickerson received during his employment were Annual Bonuses, which were calculated using the same formula described above, as a percentage of total earnings. SUMF ¶¶ 10-11, 42. For the same reasons that Plaintiffs' claims with respect to Annual Bonuses fail, Opt-in Plaintiff Dickerson's claims should be dismissed as a matter of law. *See* Section II.B.1.

---

[5] The Court denied certification of this action after Dickerson and King-Macon opted into the case. The Court has not addressed their status as opt-in plaintiffs, and their consent forms have not been withdrawn. While Defendants maintain they are not correctly part of the case given the Court's denial of certification, the Court can dismiss their claims with prejudice given the arguments and evidence presented herein. *See, e.g., Haynes v. Singer Co.*, 696 F.2d 884, 885 (11th Cir. 1983) (the district court denied certification in a case with one named plaintiff and one opt-in plaintiff, but then went on to rule on the merits of both plaintiffs' claims even though certification was denied).

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Complaint should be dismissed with prejudice in its entirety as to all Plaintiffs and Opt-in Plaintiffs.

October 31, 2022

s/ Breanne Sheetz Martell
Eva C. Madison, Bar No. 98183
Littler Mendelson, P.C.
217 E. Dickson St., Suite 204
Fayetteville, Arkansas 72701
Telephone: 479.582.6100
emadison@littler.com

Breanne Sheetz Martell, Bar No. 39632 (WA)
(*Admitted pro hac vice*)
Littler Mendelson, P.C.
One Union Square, 600 University St.
Suite 3200
Seattle, WA 98101
Telephone: 206.623.3300
bsmartell@littler.com

Brian Rho, Bar No. 51209 (WA)
(*Admitted pro hac vice*)
Littler Mendelson, P.C.
One Union Square, 600 University St.
Suite 3200
Seattle, WA 98101
Telephone: 206.623.3300
brho@littler.com

Attorneys for Defendants
Centene Management Company and Centene Corporation

4877-6729-4728.12 / 095402-1020